## FEDERAL UNDERWRITERS EXCHANGE v. ENER.

### No. 3411.

Court of Civil Appeals of Texas. Beaumont.

March 23, 1939.

Rehearing Denied March 29, 1939.

Simpson, Dorenfield & Fullingim, of Amarillo, and Claude Williams, Henry D. Akin and Benbow, Saunders & Holliday, all of Dallas, for plaintiff in error.

Glenn Faver, of Jasper, for defendant in error.

O'QUINN, Justice.

This is a workmen's compensation case. J. S. Moore & Sons was the employer, Johnnie Emmett Ener the employee, and Federal Underwriters Exchange the compensation insurance carrier. We shall refer to plaintiff in error as appellant, and defendant in error as appellee. On Feb-

ruary 16, 1937, while engaged in the course of his employment as an employee of J. S. Moore & Sons, contractors, in building a public highway in Jasper County, Texas, appellee received an injury for which he claimed compensation. He duly filed his claim before the Industrial Accident Board. On August 31, 1937, the Board made its final ruling and award, and appellee duly gave notice that he would not abide said award, and duly filed this suit in the district court of Jasper County, Texas, to set aside said award, and to recover compensation as for total and permanent disability.

Appellant, Federal Underwriters Exchange, answered by general demurrer, several special exceptions, general denial, and specially denied (a) that notice of injury was given to appellant and the Industrial Accident Board within the time and in the manner required by law; and (b) that any valid claim for compensation was filed with the Board for an amount to confer jurisdiction upon the district court; and (c) that any valid award was made by the Industrial Accident Board for in that the award relied upon by appellee did not show upon its face, nor was there any evidence to show that said award was the act of a majority of said Board.

At the close of the evidence both parties moved for an instructed verdict, which were denied. The case was then tried to a jury upon special issues which were answered favorable to appellee, and judgment was entered accordingly. Motion for a new trial was overruled hence this appeal.

Appellant's first and second assignments urge, in effect, that the court was without jurisdiction to hear and determine the case because there was no competent evidence showing that the Industrial Accident Board had passed upon and made a final award on appellee's claim for compensation. This contention is based upon the fact that the photostatic copy of the award offered and admitted in evidence did not bear the signatures of the members of the Board. The photostatic copy bore the style of the claim, its number and recited the Federal Underwriters Exchange as Insurer. It was regular in form, recited all the facts going to constitute the claim, and ordered appellant to pay the award made. Coming from the proper source, and being certified by "Berniece Grieder, Secretary", and bearing the seal of the

Board, we think it was admissible, and sufficient to show that the award was regularly made. Sec. 8, Article 8307, R.S. 1925, Vernon's Ann.Civ.St. art. 8307, § 8; 45 Tex.Jur. Sec. 298, page 821. (Note 13).

The third assignment asserts that the court erred in refusing its motion for an instructed verdict because there was no evidence as to what appellant is— that is whether it is a corporation, partnership, indemnity inter-insurance exchange, or such a legal entity as is capable of suing or being sued under the name of Federal Underwriters Exchange. Appellee in his petition alleged that appellant was a corporation, and under Article 2010, R.S.1925, the defense here invoked must have been plead under oath. The general denial was not sufficient. Criticism of the manner in which appellee alleged the nature of appellant, as to its being a corporation, or some other kind of organization, not being sufficiently specific, is urged. No special exception was plead against the allegation, nor was it in effect urged at any stage of the trial. It was treated as sufficient, and in the absence of a denial under oath the allegation that it was a corporation must be taken as true. This assignment is overruled.

The fourth, fifth, sixth and seventh assignments, as presented grouped in its brief, contend that the court erred in refusing its motion for an instructed verdict. The fourth assignment reads: "The judgment of the court entered herein is contrary to the law and the evidence." This is verbatim paragraph 47 of its motion for a new trial. This assignment is too general. It presents nothing for review. The fifth assignment is: "The judgment of the court entered herein is excessive, in that it awards to the plaintiff a greater amount of money than is authorized under the verdict of the jury." This is paragraph 49 of the motion for a new trial. We doubt the sufficiency of this assignment. The sixth assignment reads: "The answer of the jury in response to special issue No. 13 of the court's main charge is not supported by the testimony and is against the overwhelming weight of the testimony." This is paragraph 67 of the motion for a new trial. It is too general— presents nothing for review. The seventh assignment is: "The court erred in overruling and in not sustaining the objections and exceptions of this defendant addressed to the court's main charge, and which were duly and properly presented to the court prior to the submission of said main charge to the jury, and which said objections and exceptions were as follows:" (then follows four reasons why special issue No. 13 was improper). The gist of the assignments is that appellant was entitled to an instructed verdict because the appellee failed to establish by legal evidence his rate of compensation in that he did not show that his average weekly wages could not be computed under sub-section 2 of Section 1 of Article 8309, R.S.1925. Appellee plead that he had not worked approximately the whole of the year immediately preceding the date of his injury, in the employment in which he was engaged at the time of his injury, but that other employees of the same class did work substantially the whole of the year in the same or similar employment in the same or neighboring place and that such other employees earned an average daily wage of $3 per day in such employment; and in the alternative, that if no other employee of the same class had worked for substantially the whole of the year immediately preceding his injury, in the same or similar employment in the same or a neighboring place, then that no such employee had worked in that way and for that time, and that $3 would be a daily wage just and fair to both parties, and so appellee would be entitled to receive compensation on the basis of an average weekly wage of $18, or compensation at the rate of $10.80 per week, for a period of 401 weeks.

Under the pleading and the facts appellee could not have recovered compensation computed under sub-section 1 of Section 1 of Article 8309. He had worked for J. S. Moore & Sons only about two months. He alleged that he had not worked for substantially the whole of the year immediately preceding his injury, but that other employees of the same class had worked substantially the whole of such immediately preceding year in the same or similar employment in the same or a neighboring place, and that such other employees received $3 per day, and, in the alternative, that if no other employee had worked for substantially the whole of the year immediately preceding his injury, then his compensation should be determined under sub-section 3 of Section 1 of Article 8309, and that $3 per day was a wage fair and just to both parties, and that he would be entitled to an average weekly wage of $18, or

compensation at the rate of $10.80 per week. In answer to special issues properly submitted, the jury found that appellee had not worked for as much as approximately 300 days during the year immediately preceding his injury, and that no other employee in the same class as appellee had worked as much as 300 days in the year immediately preceding his injury in the same or similar employment in the same or a neighboring place. So it was thus determined that appellee's average weekly wages could not be determined under subsection 2 of Section 1 of Article 8309, and resort was had to sub-section 3 of Section 1 of said article to determine his average weekly wages. In answer to a special issue as to what, under the facts, would be the daily wage of appellee that would be just and fair to both parties, they answered $2.40, and upon this finding the compensation was computed for 130 weeks for total disability, and for 271 weeks for a twenty five per cent permanent partial incapacity, the jury having found total incapacity for 130 weeks, and after that a permanent partial incapacity of twenty five per cent. The pleadings and the evidence amply support the findings of the jury and the consequent judgment. The assignments are overruled.

What we have said disposes of appellant's eighth proposition.

■ The ninth, tenth and eleventh assignments complain that the court committed reversible error in overruling its special exceptions to appellee's petition relative to his average weekly wage and to the compensation which he alleged he was entitled to receive. There may have been some surplusage in the allegations to which objections were made, but if so they were harmless. The petition contained sufficient allegations to raise the issues, and the portions objected to, if immaterial or irrelevant, could not have injured appellant, they being more of an alleged right in law than a necessary statement of fact. These assignments are overruled.

■ The twelfth assignment is that the court erred in permitting Dr. L. H. Ledbetter, a witness for appellee, to testify, over its objection, as to what an X-ray picture which he had taken of the injured portion of appellee's body revealed as to his injury. The ground of objection was that the X-ray picture itself was the best evidence, and that the picture had not been exhibited to the jury, nor had it been sufficiently identified in that it was not shown to have been properly taken and properly developed to correctly reveal the object which it purported to portray. It was admitted that Dr. Ledbetter was a duly and legally qualified practitioner of medicine and surgery; that he was an X-ray specialist of many years' experience and wide practice. That he personally made the X-ray picture in question, and that it portrayed the lower spine and pelvis, the portion of appellee's body shown to have been injured. The injury occurred on February 16, 1937, and the X-ray was taken July 23, 1937. He detailed the condition of the spine and bony framework of that portion of the body as shown by the X-ray, and pointed out what he found to be the result of some sort of traumatism, in his opinion. He said that, in his opinion, the pain suffered by appellee and the disability following could have been caused by the injury received by appellee; that such an injury was calculated to cause one to suffer pain and disability to work. We find no error in the admission of the testimony.

■ We overrule appellant's assignment attacking the court's definition of the term "total incapacity." The charge reads: "You are instructed that the phrase 'total incapacity' as used in the court's charge does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment is ordinarily regarded as totally incapacitated." Appellant made numerous and lengthy exceptions and objections to this definition of total incapacity which it summarizes in its thirteenth proposition in these words: "The thirteenth proposition presents our contention that the court erred in refusing to include in his definition of the term 'total incapacity' the idea that total incapacity does not mean the inability to do the same or as much and as hard work as the injured person did before the injury." The inference or deduction from the proposition advanced by appellant is that if the injured person is able to do any sort of work he is not totally incapacitated under the statute. That is not the law. In Federal Surety Co. v. Scott, Tex.Civ.App., 22 S.W.2d 157, a charge defining "total incapacity" in the very words of the instant charge was held to be correct. Application for a writ of error against this holding was refused.

▮ The fourteenth assignment complains that the court erred in the manner of submitting special issue No. 8 to the jury. Special Issue No. 8 reads:

## "Issue No. 8."

"If you have answered Issue No. 4, 'no', and only in that event, then answer the next special issue:

"Do you find from a preponderance of the evidence that John Emmett Ener sustained partial incapacity for work after the termination of his period of total incapacity, if any you have found as a result of the injuries, if any sustained by him on February 16, 1937?" Answer "yes" or "no". The jury answered "yes."

The gist of the complaint is that the defense of partial incapacity was not affirmatively submitted to the jury. In answer to issue 2, they found that appellee was accidentally injured in the course of his employment; to issue 3, that his injuries resulted in total incapacity; to issue 4, that such total incapacity was not (answered "No") permanent; and to issue 7, that the total incapacity would continue for 130 weeks. Issue No. 8 sought to find whether, after the period of total incapacity terminated, he would suffer partial incapacity. This was answered "Yes". We do not believe the charge was subject to the criticism offered. It gave an affirmative submission of that issue. The jury having answered that the total incapacity suffered by reason of the injury was not permanent, the natural inquiry followed was did partial incapacity follow. The pleadings and the evidence raised the issue and we think it was properly submitted.

▮ Assignment fifteen, as copied in its brief, is: "The fifteenth proposition presents our contention that the trial court erred in not submitting to the jury proper issues on whether plaintiff's incapacity, both total and partial, permanent and temporary, were due to congenital anomalies, since such issues were clearly raised by the evidence and the defendant duly objected to the court's charge for not containing such issues and requested the court to formulate and submit such issues to the jury."

The assignment complains that the court did not submit issues to the jury as to whether appellee's incapacity was due to congenital anomalies, and says such issues were raised by the evidence, and that it excepted to the charge because of the omission to so charge, and requested the court to formulate and submit such charges. It does not appear that appellant itself formulated and presented to the court any charge and requested its submission. The assignment is overruled. Where the court fails to charge on any phase of the case, if the party complaining desired such charge it was his duty to prepare and submit to the court a proper charge covering the matter omitted and request its submission. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Texas Co. v. Ramsower, Tex.Com. App., 7 S.W.2d 872, par. 9 syllabus, page 876.

▮ Special issue No. 4-A was: "Do you find from a preponderance of the evidence that the plaintiff's employer, or his or its duly authorized agent, had notice of the injury, if any, sustained by John Emmett Ener on February 16, 1937, within thirty days after said date?"

This issue is assailed as being duplicitous. The assignment is overruled. The record clearly reflects that Page, the foreman of the employer, J. S. Moore & Sons, had immediate actual notice of the accident and injury to appellee. The second day after the accident appellee went to Dr. Kelly whom he knew to be the doctor for J. S. Moore & Sons for treatment. Doctors Seale, Richardson and Kelly operated a hospital at Jasper. They examined him, made X-ray pictures of him, and then put him in the hospital and treated him for about two months, and then he was sent to Dr. Clapp at Galveston for further examination and treatment. All this was done at the instance of appellant. It paid for his hospitalization, and also paid him $84 for 12 weeks compensation. These being the facts, no proof of notice was required. Texas Employers' Ins. Ass'n v. Fricker, Tex.Civ.App., 16 S.W.2d 390, writ refused.

▮ The seventeenth and last assignment asserts that as no issue as to whether appellee was an employee of J. S. Moore & Sons was submitted to the jury, and none requested to be submitted, such issue was waived, and the court was without authority to make such finding, and so there was no basis for the judgment. The undisputed facts showed that appellee was working for J. S. Moore & Sons, road contractors, when he received his injury. We think appellant mistaken in its contention that no issue was submitted as to appellee being an employee of Moore & Sons. Spe-

cial issue No. 2 reads: "Do you find from a preponderance of the evidence that Johnnie Emmett Ener sustained said accidental injuries, if any you have found, in the course of his employment for J. S. Moore & Sons?" The jury answered "Yes." This was a direct submission and finding that appellee was the employee of Moore & Sons at the time he received his injury. Moreover, the undisputed evidence showing that appellee was the employee of J. S. Moore & Sons, there was no necessity for the submission of such issue. Undisputed facts do not have to be submitted to a jury for its finding. Speer's Law of Special Issues, Sec. 163, page 211; Id. Sec. 429, page 558; Id. Sec. 456, page 585; 41 Tex.Jur. page 1079, Sec. 260.

No reversible error appearing, the judgment is affirmed.